UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CORY E. COX, | ) |
| Plaintiff, | ) No. CV-08-0236-CI |
| v. | ) ORDER GRANTING PLAINTIFF'S |
| | ) MOTION FOR SUMMARY JUDGMENT |
| MICHAEL J. ASTRUE, | ) AND DENYING DEFENDANT'S |
| Commissioner of Social Security, | ) MOTION FOR SUMMARY JUDGMENT |
| Defendant. | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 13, 16.) Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Thomas M. Elsberry represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment, and remands the matter to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

**JURISDICTION**

On December 12, 2005, Cory E. Cox (Plaintiff) applied for Disability Insurance benefits and Social Security Income (SSI) benefits. (Tr. 64-65, 319-21.) Plaintiff alleged disability due to mental health issues of social anxiety, depression and possible bi-polar disorder. (Tr. 117.) At the hearing, Plaintiff requested a closed period of disability from December 1, 2003, through August 1,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

2007. (Tr. 15, 328.) Benefits were denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Hayward Reed on December 12, 2007. (Tr. 327-70.) Plaintiff, who was represented by counsel; medical expert Allen D. Bostwick, Ph.D.; and vocational expert Fred Cutler (VE) testified. The ALJ denied benefits on January 15, 2008, and the Appeals Council denied review. (Tr. 4-6, 15-28.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. Plaintiff was 29 years old at the time of the hearing. He was divorced, without children. He went to high school until 11th grade, and later obtained his high school equivalency degree. (Tr. 341-42.) He testified he had some special education classes while in school and still had trouble with reading. (Tr. 342.) He had past work experience as a telemarketer, telephone survey caller, injection molding machine off-bearer, and production assembler. (Tr. 128.) He reported he could not work during his alleged closed period of disability due to severe psychological problems and an inability to be around people without breaking down. (Tr. 343.)

**ADMINISTRATIVE DECISION**

ALJ Reed found Plaintiff met insured status requirements for DIB benefits through December 31, 2003. (Tr. 18.) At step one, he found Plaintiff had not engaged in substantial gainful activity during the closed period (*Id.*) At step two, he found Plaintiff had

the following severe impairments: "depressive disorder not otherwise specified, social phobia with symptoms of posttraumatic stress disorder and occasionally panic attack symptoms, personality disorder not otherwise specified with avoidant and inadequate features, cannabis dependence, and mild scoliosis." (*Id*.)  At step three, he found Plaintiff's physical and mental impairments, alone or in combination, did not meet or medically equal an administratively recognized level impairment listed in Appendix 1, Subpart P, Regulations No. 4 (Listings).  (Tr. 18.)  He concluded, however, that with the effects of substance abuse, Plaintiff could not perform past work, or other work in the national economy, and was therefore disabled.  (Tr. 20-21.)

After conducting a second sequential evaluation without the effects of substance abuse, the ALJ concluded drug abuse was a contributing factor material the initial finding of disability. (Tr. 21-27.)  He found that without the effects of substance abuse, Plaintiff could perform past relevant work as a production assembler, injection molding machine off-bearer, hand packer, and survey worker, and was, therefore, not disabled, as defined by the Social Security Act.  (Tr. 27.)

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098.

Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and

detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he (1) failed to provide specific and legitimate reasons for rejecting examining physician opinions, and (2) improperly relied on the non-examining medical expert's opinion. He further contends the ALJ's mental RFC findings were not supported by the evidence. (Ct. Rec. 14.)

**DISCUSSION**

**A.   Sequential Evaluation in the Context of Substance Abuse**

Where drug and/or alcohol abuse (DAA) is a consideration during

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

disability proceedings, the Regulations implemented by the Commissioner require the ALJ to follow a specific two-step analysis. 20 C.F.R. §§ 404.1535(a), 416.935(a). First, the ALJ must conduct the five-step sequential evaluation without attempting to determine the impact of DAA. If the ALJ finds that the claimant is not disabled under the five-step inquiry, the claimant is not entitled to benefits, and there is no need to proceed with further analysis. Id. If the ALJ finds that claimant is disabled, and there is evidence that DAA is a contributing factor material to disability, the ALJ should proceed under the sequential evaluation and §§ 404.1535 or 416.935 to determine if the claimant would still be disabled if he stopped using drugs and alcohol. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

If found disabled with the effects of substance addiction, it is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007). As stated by the *Parra* court, a drug addicted claimant "who presents inconclusive evidence of materiality has no incentive to stop [abusing drugs], because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated." *Id.* Thus, through the CAAA, Congress seeks "to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." *Ball v. Massanari*, 254 F.3d at 817, 824 (9th Cir. 2001).

Here, the ALJ conducted a two step analysis. In the first sequential evaluation, ALJ Reed found that although Plaintiff's impairments, including substance abuse, did not meet or equal a Listing, Plaintiff had moderate to marked limitations in his

functioning due to mental health issues that prevented him from performing his past work or other work in the national economy. (Tr. 21.)

The ALJ then found that if Plaintiff stopped the substance abuse, Plaintiff would continue to have "severe impairments, or combination of impairments," that would not meet or equal the Listings. (Tr. 21-22.) Based in part on medical expert testimony, and the findings of agency psychologist Sharon Underwood, Ph.D., the ALJ made a second RFC determination. (Tr. 22, 26.) He concluded that, without substance abuse, Plaintiff would have the RFC to perform medium work, had "good use of his hands and arms for grasping, holding, and turning objections," but required the ability to sit intermittently. (Tr. 22.) Regarding non-exertional limitations due to mental impairments, the ALJ further found:

> The claimant can perform simple and detailed tasks. He does not like to be alone, but he would likely be overwhelmed with frequent contact with the public. He likes to have attention and this occasionally might be a distraction to others. The claimant would be able to handle occasional changes in the work setting.

(*Id*.) Considering "all evidence relating to how the claimant would function" if the substance use was stopped, as well as VE testimony and Plaintiff's credible statements, the ALJ found Plaintiff could perform work activities of past relevant work. (Tr. 27.)

**B. Medical Opinions**

Plaintiff argues the ALJ improperly rejected the medical opinions of examining psychologists Mahlon Dalley, Ph.D., Kayleen Islam-Zwart, Ph.D., and James Bailey, Ph.D., all of whom examined Plaintiff during the alleged closed period of disability. (Tr. 152-60, 177-84, 185-95.) He contends these medical sources identified

mental limitations that, if properly credited, would support a finding of disability. (Ct. Rec. 14 at 18.)

In disability proceedings, an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004). If an examining physician's opinion is not contradicted, it can be rejected only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When rejecting conflicting examining or treating medical source opinions, the ALJ must "make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Sprague*, 812 F.2d at 1230; *see also Flaten v. Secretary of Health and Human Services*, 44 F.3d 1453, 1463 (9th Cir. 1995).

To meet this burden, the ALJ can set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints, as specific, legitimate reasons for disregarding an examining physician's opinion. *Flaten*, 44 F.3d at 1463-64; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Dr. Dalley and mental health counselor Brooke Sjostrom (M.S.) evaluated Plaintiff on April 12, 2005. They administered the Minnesota Multiphasic Personality Inventory-2 (MMPI-2); a mini Mental Status Exam (MSE); and Trails A and B. The results of their

examination are included in a narrative report and psychological/psychiatric report form. (Tr. 177-84.) In the narrative report, the evaluators noted "marked" severity for depressed mood, verbal expression of anxiety/fear and social withdrawal. (Tr. 179.) "Marked" functional limitations (social) were also noted in the evaluation report form in three areas: ability to relate appropriately to co-workers and supervisors; ability to interact appropriately in public contacts; and ability to respond appropriately to the pressures and expectations of a work setting, with an estimated severity duration of six to twelve months. (Tr. 183.) There was no evidence of malingering or exaggeration noted in objective test results. (Tr. 179.) The examining professionals opined that once Plaintiff's depressive and anxiety symptoms stabilized, Plaintiff "should be able to function in an entry-level work environment that requires minimal contact with co-workers and supervisors." (Tr. 180.) During the interview, Plaintiff denied drug use in the last five years. (Tr. 177.)

Dr. Islam-Zwart and mental health counselor Abigail Osborne-Elmer (M.S.) re-evaluated Plaintiff on October 6, 2005. The same objective psychological tests, plus a "Work Potential Profile," were administered. Results were also interpreted in a narrative report, and summarized in a psychological/psychiatric report form. (Tr. 189-94.) Based on the objective data collected, moderate severity was assessed in: depressed mood, verbal expression of anxiety/fear, social withdrawal and paranoid behavior. (Tr. 189.) Neither invalidity nor malingering was indicated. (Tr. 187.) The evaluator observed that Plaintiff's symptoms would interfere with his ability

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

to tolerate the stress of a normal work environment. (*Id.*) Dr. Islam-Swart's report concluded Plaintiff would be able to return to work with minimal contact of co-workers and supervisors once his symptoms were stabilized. (Tr. 189.) The accompanying report form indicated "marked" functional limitations in the same areas noted by Dr. Dalley and Ms. Sjostrom, with an estimated severity duration of six months. (Tr. 193-94.) During the interview, Plaintiff denied current drug abuse. (Tr. 186.)

Dr. Bailey examined Plaintiff in May 2006. He provided a narrative report, with test results, and an evaluation form report summarizing his findings. (Tr. 152-160.) He conducted a MSE, and administered the following objective psychological tests: the Rey 15-Item test and the Wechsler Adult Intelligence Scale. Plaintiff's IQ results were within the normal/average range. Although Dr. Bailey questioned Plaintiff's effort on the MSE, he found no clear evidence of malingering. (Tr. 153, 154.) During the interview, Plaintiff reported no marijuana use in the last six years. (Tr. 153.) In his narrative report, Dr. Bailey opined Plaintiff would have trouble with supervisors and coworkers, but recommended getting employer reports to confirm Plaintiff's self-report. (Tr. 156.)

In his second sequential evaluation, the ALJ briefly referenced these psychological assessments and gave them "little weight." (Tr. 26.) In discounting the opinions, he reasoned the evaluations were completed by "non-treating mental health professionals," at a single examination, and were "predicated on self-report in a secondary gain context." (*Id.*) He also found it was not "clear ... whether the claimant's substance abuse was considered." (*Id.*) These reasons are not sufficiently "specific" or "legitimate" to reject completely

the extensive findings included in the examining psychologists' narrative reports. In addition, the ALJ did not summarize or discuss the detailed narrative reports and test results submitted with the rejected "check box" forms in either sequential evaluation. The ALJ did not meet his burden under the legal standard applicable to the opinions of examining physicians. Therefore, his disability determination is based on reversible legal error. *Lester*, 81 F.3d at 831.

Plaintiff also contends the ALJ erred in relying on medical expert Dr. Bostwick's testimony. (Ct. Rec. 18 at 14.) The analysis and opinion of a non-examining medical expert selected by the ALJ may be helpful in his adjudication. *Andrews,* 53 F.3d at 1041. However, testimony of a medical expert may serve as substantial evidence only when supported by other competent evidence in the record. *Id.* Here, the ALJ's reliance on Dr. Bostwick's testimony regarding Plaintiff's RFC without the effects of substance abuse is supported only by the opinions of Sharon Underwood, a non-examining psychologist, and in part by the opinions of Paul Michels, M.D., psychiatrist who examined Plaintiff one time on January 31, 2005. It is noted, however, that unlike Drs. Dalley and Islam-Zwart, Dr. Michels did not administer objective psychological tests to support his diagnoses or conclusions. Rather, his findings are based on a review of Plaintiff's applications for state welfare and his self-report during a one-time interview. (Tr. 171.)

Specifically, Dr. Michels noted Plaintiff was neither involved in mental health treatment nor taking medication for his psychological impairments. (Tr. 175-76.) He considered Plaintiff's prognosis as "guarded," with focus and concentration mildly

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

impaired, pace and persistence mildly impaired. (Tr. 176.) Dr. Michels opined Plaintiff was capable of understanding, remembering, and following simple instructions, but would have occasional difficulties in completing specific tasks in a timely or consistent manner. Consistent with Drs. Dalley and Islam-Zwart, Dr. Michels observed Plaintiff's difficulty interacting with others caused the majority of his job-related problems. (*Id*.) This report, and the report of Dr. Underwood, a non-examining psychologist, is not substantial evidence (1) to reject completely the reports of other qualified examining psychologists who based their opinions on an interview and objective testing; or (2) to support the conflicting assessment of a non-examining medical expert. *Lester*, 81 F.3d at 831. The ALJ's rejection of Drs. Dalley, Islam-Zwart, and Bailey's opinions and reliance on Dr. Bostwick's testimony is unsupported by substantial evidence and based on legal error.[1] *Brawner,* 839 F.2d at 433; *see also Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).

---

[1] Defendant's argument that the ALJ's failure to reject examining medical source opinions supported by objective testing is harmless error is not persuasive. (Ct. Rec. 17 at 15.) As discussed below, the failure to include unrejected mental limitations in the hypothetical questions to the VE may have prejudiced Plaintiff significantly at step four. The court cannot "confidently conclude" that no reasonable ALJ could have reached a different disability determination if the erroneously rejected medical opinions were credited. *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

**C.   Step Four - RFC Findings and Past Relevant Work**

At step four, the Commissioner makes RFC findings, and determines if a claimant can perform past relevant work.  Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion.  *Social Security Ruling (SSR)* 82-62.  This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920 (a)(4)(iv).  The Commissioner has defined the RFC as is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," *i.e.*, for eight hours a day for five days a week, or an equivalent work week.  *SSR* 96-8p. Past relevant work is work performed in the last 15 years, lasted long enough to learn it and was substantial gainful employment. *SSR* 82-61. In a step four finding that an individual has the capacity to perform a past relevant job, the decision must contain among the findings the following specific findings of fact:

   1.   A finding of fact as to the individual's residual functional capacity;

   2.   A finding of fact as to the physical and mental demands of the past job/occupation; and

   3.   A finding of fact that the individual's residual functional capacity would permit a return to his or her past job or occupation.  *SSR* 82-62.

These findings must be based on the evidence in the record and must be developed and fully explained in the disability decision. Evidence of the physical and mental requirements of a particular job

may be found in the DICTIONARY OF OCCUPATIONAL TITLES, other administratively recognized publications, or vocational expert testimony. *SSR* 82-61. Vocational experts are used most often at an ALJ hearing. *SSR* 00-4p. Step four requires specific findings on all three points sufficient "to insure that the claimant really can perform his past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); *see also SSR* 00-40.

At the hearing, the VE testified that based on the written record and Plaintiff's hearing testimony, Plaintiff had past relevant work as a production assembler, telemarketer and survey worker, injection molding machine off-bencher, and hand packer. (Tr. 359-61; *see also* Tr. 128.) At step four of the sequential evaluation without the effects of substance abuse, the ALJ found Plaintiff could perform these jobs. (Tr. 26.) However, the ALJ made no findings regarding the mental demands of these jobs or the effects of Plaintiff's unrejected mental limitations on his ability to complete a normal workday and workweek. An ALJ's failure to provide detailed step four findings, including an explanation of the physical and mental demands of a claimant's past jobs is reversible error. *Pinto*, 249 F.3d at 845.

The ALJ's first hypothetical question described an individual with "moderate" limitations in his ability to work in coordination with others, interact appropriately with the general public, with no significant limitation in his ability to complete a workweek without interruptions from psychologically based symptoms. (Tr. 365.) These limitations are not supported by Dr. Michels' unrejected conclusions that Plaintiff suffered a personality disorder that would cause difficulty interacting with others, "occasional

difficulties completing specific tasks in a timely or consistent manner," and stress-induced psychological distress that would make it "difficult again for him to complete specific tasks in a timely or consistent manner." (Tr. 176.) It is noted on independent review that reports of these limitations are consistent throughout the record. (*See, e.g.*, Tr. 176, 183, 193, 314.) In another hypothetical, the ALJ included limitations found in Dr. Michels' report (Tr. 176, 369), and the VE testified the individual probably could not sustain work. (Tr. 370.) Thus, the VE's testimony in response to this hypothetical is not conclusive that Plaintiff could perform his past work.

Further error was the failure to include in the hypothetical those functional limitations identified by examining psychologists that were not rejected by the requisite "specific and legitimate" reasons, as discussed above. *See Magallanes,* 881 F.2d at 756; *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)(VE testimony has no evidentiary value if hypothetical question is not supported by substantial evidence). The step four findings are, therefore, not supported by substantial evidence.

**D.   Remedy**

There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinions of an examining psychologist. The general rule, found in the *Lester* line of cases, is that "we credit that opinion as a matter of law." *Lester,* 81 F.3d at 834; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989). Under the alternate approach found in *McAllister*, *supra,* a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

disregarding the opinion. *See also Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990)(*citing McAllister*). Where evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand is the proper disposition. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990). Further, remand for additional proceedings is proper where, as here, there are issues that must be resolved relating to the effects of Plaintiff's documented substance abuse on his mental limitations during the alleged closed period of disability. *See Smolen v. Chater,* 80 F.3d 1273, 1291-92 (9th Cir. 1996). Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13 )** is **GRANTED** and the matter is remanded to the Commissioner for additional proceedings consistent with the decision above and pursuant to sentence four of 42 U.S.C. § 405(g);

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 16)** is **DENIED;**

3. Application for attorney's fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **PLAINTIFF** and the file shall be **CLOSED**.

DATED June 29, 2009.


                    S/ CYNTHIA IMBROGNO
                 UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16